UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STOR/GARD, INC. and
SGI-WALPOLE, LLC,
    Plaintiffs,

v.                                               CIVIL ACTION NO.
                                                10-12274-MBB

STRATHMORE INSURANCE
COMPANY,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFFS' MOTION for SUMMARY JUDGMENT**
**(DOCKET ENTRY # 20);**
**DEFENDANT'S MOTION for SUMMARY JUDGMENT**
**(DOCKET ENTRY # 27)**

**May 4, 2012**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by plaintiffs Stor/Gard, Inc. and SGI-Walpole, LLC ("plaintiffs") pursuant to Rule 56, Fed. R. Civ. P. ("Rule 56"). (Docket Entry # 20). Also pending is a motion for summary judgment filed by defendant Strathmore Insurance Company ("defendant"). (Docket Entry # 27). After conducting a hearing on January 17, 2012, this court took the motions (Docket Entry ## 20 & 27) under advisement.

PROCEDURAL BACKGROUND

On December 30, 2010, plaintiffs brought this action against defendant alleging breach of an insurance contract.

(Docket Entry # 1).  The complaint sets out two causes of action:  (1) breach of the insurance contract (Count I); and (2) violation of Massachusetts General Laws chapter 93A ("chapter 93A") (Count II).[1]  (Docket Entry # 1).  On January 27, 2011, defendant filed a counterclaim seeking a declaratory judgment that the policy does not cover damage from the accident at issue.  (Docket Entry # 5).

On December 1, 2011, plaintiffs filed the motion for summary judgment on the breach of contract claim and the counterclaim.[2]  (Docket Entry # 20).  On December 21, 2011, defendant filed the motion for summary judgment on both counts in the complaint and the counterclaim.  (Docket Entry # 27).  Plaintiffs and defendant also filed statements of undisputed material facts under Rule 56(c), Fed. R. Civ. P., and LR. 56.1.  (Docket Entry ## 22, 27, 31 & 32).

FACTUAL BACKGROUND

At all material times defendant insured plaintiffs' interest in a self storage facility at 500 Providence Highway in Walpole, Massachusetts ("the property") under policy number

---

[1]  In plaintiffs' opposition to defendant's motion for summary judgment (Docket Entry # 30), plaintiffs clarify that they intend to pursue Count II under section 11 of chapter 93A.
[2]  Plaintiffs do not seek summary judgment on the alleged violation of chapter 93A.  (Docket Entry # 20).

2

8120Q16526 ("the policy"). (Docket Entry # 1). The relevant terms of the insurance policy are as follows:

**A. Covered Causes of Loss**
. . . Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:
    **1.** Excluded in Section B., Exclusions; or
    **2.** Limited in Section C., Limitations;[3]
that follow.

**B. Exclusions:**
1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . .
    **b. Earth Movement** . . .
        (2) Landslide, including any earth sinking, rising or shifting related to such event . . .
Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area . . .

**D. Additional Coverage - Collapse**
The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in D.1. through D.5. below . . .
2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:
    a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part . . .

**G. Definitions** . . .
2. "Specified Causes of Loss" means the following: . . . water damage . . .
    c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing,

---
[3] The limitations section is not at issue in this dispute.

3

> heating, air conditioning or other system or
> appliance (other than a sump system including
> its related equipment and parts), that is
> located on the described premises and contains
> water or steam.

(Docket Entry # 22-2, pp. 42-50).

On March 15, 2010, after approximately three days of rain, a mass of soil slid down a slope and caused soil and a retaining wall to fall on and into a storage building on the property ("the accident"). (Docket Entry ## 21 & 27-1). The accident caused a partial collapse of the building. (Docket Entry # 21).

Shortly after the accident, plaintiffs notified defendant of a claim under the policy. (Docket Entry # 21). On July 21, 2010, defendant denied liability in a letter to plaintiffs citing the exclusion in the policy for damage caused by landslide. (Docket Entry # 5). Defendant based the denial on engineering reports by GZA GeoEnvironmental, Inc. ("the GZA report") and Aegis Engineering Services, Inc. ("the Aegis report"). (Docket Entry # 21).

The Aegis report referred to the accident as a landslide that was caused by the infiltration of subsurface water to the failed area. (Docket Entry # 25-4). The report analyzed "potential sources of subsurface water that could have caused or contributed" to the landslide. (Docket Entry # 25-4, p. 12). Possible sources were the "infiltration of rain, storm water runoff, and/or ponded water" as well as possible leaks from a

water supply pipe or the subsurface storm water drainage system on the property. (Docket Entry # 25-4, p. 12). Aegis' investigation did not find a leak from the water supply pipe but found "minimal net leakage" from the subsurface storm water drainage system ("the drainage system"). (Docket Entry # 25-4, p. 12). The Aegis report concluded that this leak "was not a cause or contributing factor" to the landslide. (Docket Entry # 25-4, p. 12). Instead, the report found that the sources of the subsurface water were "the infiltration of rain, storm water runoff, and/or ponded water." (Docket Entry # 26, p. 1).

According to the GZA report, the accident was caused by the "rapid downward movement of the mass of fill material that was used to construct the slope originally" due to "a combination of the heavy rain infiltrating into the slope and the inadequate subsurface drainage behind the retaining wall." (Docket Entry # 23-1, p. 7). The accident "was related to the steepness of the slope, the soil (i.e., fill) conditions within the slope, the poor drainage behind the retaining wall and the design and construction of the wall itself." (Docket Entry # 23-1, p. 5). Similar to the Aegis report, the GZA report investigated the leak from the drainage system and concluded the following:

> 5. Primary Source of Soil Saturation Not Related to Leakage of Storm Drain System - The premise put forth by others that the failure was caused by leakage of stormwater from the subsurface drainage system southeast of the failure zone is not supported by our analyses that indicate

5

> that such leakage represented merely 2% of the water which
> infiltrated the failed area.

(Docket Entry # 23, p. 7). Based on this finding, GZA concluded that the leakage from the drainage system "resulted in a very small percentage of water infiltrating the ground." (Docket Entry # 23-1, p. 7).

STANDARD OF REVIEW

Where parties file cross motions for summary judgment, the court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet National Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004). Each summary judgment motion is reviewed separately and factual disputes are resolved in favor of the nonmoving party. See Saenger Organization, Inc. v. Nationwide Insurance Licensing Associates, 119 F.3d 55, 57 (1st Cir. 1997).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Thus, to "fend off" summary judgment, "the nonmoving party must establish at least a genuine issue of material fact on every element essential to his case in chief." Preferred Mutual Insurance Co. v. Meggison, 53 F.Supp.2d 139, 141 (D.Mass. 1999).

The nonmovant cannot avoid summary judgment by asserting mere allegations.  Id.

DISCUSSION

The parties cite to Massachusetts law in their briefs and do not dispute that Massachusetts law applies.  (Docket Entry ## 21 & 28).  Accordingly, this court will apply Massachusetts law.  See McGrath & Company, LLC v. PCM Consulting, Inc., 2012 WL 503629, at *11 (D.Mass. Feb. 15, 2012).

Under Massachusetts law, "the interpretation of insurance contracts is generally a matter of law for the court." Scottsdale Insurance Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009).  Massachusetts courts utilize general rules of contract interpretation to construe an insurance policy.  Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Inc. Co., 220 F.3d 1, 4 (1st Cir. 2000) ("[u]nder Massachusetts law, we construe an insurance policy under the general rules of contract interpretation").  A policy's actual language is "given its plain and ordinary meaning" considering "'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'"  Id.; accord National Union Fire Insurance Co. of Pittsburg, Pennsylvania v. West Lake Academy et al., 548 F.3d 8, 13 (1st Cir. 2008) (courts "'begin with the actual language of the policies, given its plain and ordinary

7

meaning'" and "'[i]n so doing, we consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered'") (quoting Brazas, 220 F.3d at 4); see also Scottsdale Insurance Co., 561 F.3d at 77 (courts "'construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter'").

Moreover, "every word in an insurance contract 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.'" Allmerica Financial Corp. v. Certain Underwriters at Lloyd's London, 871 N.E.2d 418, 425 (Mass. 2007) (quoting Jacobs v. United States Fidelity & Guaranty Co., 627 N.E.2d 463, 464 (Mass. 1994)). In giving words in an insurance contract meaning and effect, however, courts should not accord "undue emphasis to any particular part over another." Boston Gas Co. v. Century Indemnity Co., 910 N.E.2d 290, 305 (Mass. 2009).

An insurance contract is also examined and construed "'with reference to all of its language and to its general structure and purpose.'" Cofman v. Acton Corp., 958 F.2d 494, 498 (1st Cir. 1992) (quoting Radio Corp. of America v. Raytheon Manufacturing Co., 14 N.E.2d 141, 143 (Mass. 1938)); accord In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332, 1357 (1st Cir. 1992) (court should consider each phrase and clause in light of all other phraseology); see also Sullivan v. Southland Life

8

Insurance Co., 854 N.E.2d 138, 142 (Mass.App.Ct. 2006) ("trial judge erred in relying solely on a dictionary definition of the word 'single' and ignoring the consistent language used throughout the policy"). Both the structure and the specific words set out an insurance policy's meaning. Boston Edison Co. v. F.E.R.C., 856 F.2d 361, 366 (1st Cir. 1988); see, e.g., Sullivan, 854 N.E 2d at 142-143 (terms of insurance policy unambiguous when read as a whole and in light of use of similar language on various pages of policy).

In the event words of a policy "are not ambiguous, 'they must be construed in their usual and ordinary sense.'" Scottsdale Insurance Co., 561 F.3d at 77; accord Nascimento v. Preferred Mutual Insurance Co., 513 F.3d 273, 276 (1st Cir. 2008) (absent ambiguity, words of insurance policy are construed "in their usual and ordinary sense"). An "[a]mbiguity exists when the policy language is susceptible to more than one meaning." Scottsdale Insurance Co., 561 F.3d at 77; accord Genuine Bukuras v. Mueller Group, LLC, 592 F.3d 255, 262 (1st Cir. 2010) ("'ambiguity requires language susceptible of more than one meaning so that reasonably intelligent persons would differ as to which meaning is the proper one'") (quoting Basis Tech. Corp. v. Amazon.com, Inc., 878 N.E.2d 952, 958-59 (Mass.App.Ct. 2008)). "Ambiguous policy terms are construed in favor of the insured." Scottsdale Insurance Co., 561 F.3d at 77 (citing

9

Hazen Paper Co. v. U.S. Fidelity & Guaranty Co., 555 N.E.2d 576, 583 (Mass. 1990)).

In general, the insured bears the burden of proving that a loss is within the description of the risks covered by a policy. See Highlands Insurance Co. v. Aerovox, Inc., 676 N.E.2d 801, 804 (Mass. 1997). Where, as here, the insurer invokes an exclusion to coverage in the policy, the insurer bears the burden of showing that the insured's claim falls within the exclusion. See Driscoll v. Providence Mutual Fire Insurance Co., 867 N.E.2d 806, 808 (Mass.App.Ct. 2007); United Specialty Insurance Co. v. Weisberg, 2011 WL 7111451, at *5 (Mass.Super.Ct. Dec. 28, 2011). Exclusions are strictly construed and read literally. See Great Southwest Fire Insurance Co. v. Hercules Building & Wrecking Co., 619 N.E.2d 353, 356 (Mass.App.Ct. 1993). If the insured relies on an exception to an exclusion, then the burden is on the insured to prove that the exception applies. See United Specialty Insurance Co., 2011 WL 7111451 at *5.

I. Defendant's Motion for Summary Judgment (Docket Entry # 27)

Defendant contends that there is no coverage for the accident because the policy excludes damage caused by landslide. (Docket Entry # 21). Landslide is an excluded cause of loss under Section B - Exclusions ("the exclusion section"). The exclusion section states in pertinent part:

10

> **B. Exclusions:**
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . .
>    **b. Earth Movement** . . .
>       (2) Landslide, including any earth sinking, rising or shifting related to such event . . .

(Docket Entry # 22-2, p. 42). Defendant relies on the GZA and Aegis reports to conclude that the cause of the accident was a landslide. (Docket Entry # 21). As a result of this conclusion, defendant contends that summary judgment is appropriate because the policy excludes damage caused by landslide. (Docket Entry # 21).

Where, as here, the policy does not define the term at issue, Massachusetts Courts often resort to dictionary definitions including <u>Webster's Third New International Dictionary</u> to determine the usual and ordinary meaning of the term. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Suave</u>, 953 N.E.2d 178, 183 (Mass. 2011) (defining the usual and accepted meaning of "menace" using <u>Webster's Third International Dictionary</u> (1981)); <u>Clendenning v. Worcester Insurance Co.</u>, 700 N.E.2d 846, 847-48 (Mass.App.Ct. 1998) (defining the plain meaning of "collapse" using <u>Webster's Third New International Dictionary</u> (1993)); <u>New England Mutual Life Insurance Co. v. Liberty Mutual Insurance Co.</u>, 667 N.E.2d 295, 298 (Mass.App.Ct. 1996) (interpreting the

usual and ordinary sense of the phrase "arising out of" with reference to Webster's Third New International Dictionary (1981)).

The definition of "landslide" in Webster's Third New International Dictionary is: "the rapid downward movement under the influence of gravity of the massive rock, earth, or artificial fill on a slope." Webster's Third New International Dictionary 1269 (1981). The GZA report described the cause of the accident as "the rapid downward movement of the mass of fill material" on the slope adjacent to the property. (Docket Entry # 23, p. 7). This language directly mirrors the plain and ordinary meaning of the term "landslide." Likewise, the Aegis report categorizes the accident as a landslide. (Docket Entry # 25-4). Plaintiffs fail to present any evidence that the accident did not constitute a landslide. (Docket Entry ## 1, 9, 20, 21, 22, 30, 31 & 32). As a result, there is no genuine dispute of material fact as to whether the accident was caused, at least in part, by landslide. Defendant therefore satisfies its burden to establish that the accident falls within the scope of the landslide exclusion.

In response, plaintiffs argue that the accident is covered by an alleged exception to the exclusion section: Section D - Additional Coverage - Collapse ("Section D"). (Docket Entry # 21). Plaintiffs reason that if Section D provides coverage for

12

a contributing cause of the accident, then the policy provides coverage for the accident. (Docket Entry # 21).

First and foremost, Section D does not contain any language to indicate that it is an exception to the exclusion section. (Docket Entry 22-2). To the contrary, the first section of the policy, Section A, specifies that the policy insures "Covered Causes of Loss . . . unless the loss is: 1. Excluded in Section B., Exclusions." (Docket Entry # 22-2, p. 42). Using the same language, the preamble to Section D states: "The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in D.1. through D.5. below." (Docket Entry # 22-2, p. 47). Section D provides additional causes of loss under the policy but there is no language to indicate that Section D is not subject to the general and overriding provision of Section A which defines "Covered Causes of Loss." (Docket Entry # 22-2, p. 47). The plain meaning of the language and structure of the policy establishes that causes of loss that are covered under Section D are still subject to the exclusions in the exclusion section. Section D does not function as an exception to the exclusion section.

To support plaintiffs' argument that Section D is an exception to the exclusion section, plaintiffs point out that Section D does not contain an anti-concurrent causation clause. (Docket Entry ## 21 & 30). An anti-concurrent causation clause

13

excludes damage caused by an excluded cause of loss even if it is partially caused by a covered cause of loss. See Preferred Mutual Insurance Co., 53 F.Supp.2d at 142. This type of clause indicates that, if an accident is caused by both a covered cause of loss and an excluded cause of loss, then all coverage is excluded. See Id. Plaintiffs argue that without an anti-concurrent causation clause, Section D provides coverage even where an excluded cause of loss contributed to the accident. (Docket Entry # 21).

Plaintiffs base this argument on the GZA report's indication that the leak from the drainage system "represented merely 2% of the water which infiltrated the failed area." (Docket Entry # 23, p. 7). According to plaintiffs, this statement confirms that water leakage was a contributing cause of the accident. (Docket Entry # 21). Plaintiffs go on to argue that water leakage is covered as water damage[4] under Section D because it contributed to the landslide that lead to the partial collapse of the building and therefore the accident.

---

[4] Water damage is defined in the policy as:

> accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

(Docket Entry # 22-2, p. 50).

14

(Docket Entry # 21). Plaintiffs further contend that because this concurrent cause of the accident is covered under Section D, the accident is covered under the policy. (Docket Entry # 21).

Plaintiffs' argument fails because the policy has an anti-concurrent causation clause in the exclusion section. (Docket Entry # 22-2, p. 42). Paragraph B.1 specifically excludes all loss caused "directly or indirectly" by landslide, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Docket Entry # 22-2, p. 42). This clause is nearly identical to the clauses at issue in two Massachusetts cases. See Jussim v. Massachusetts Bay Insurance Co., 610 N.E.2d 954, 957-58 (Mass. 1993); Driscoll, 867 N.E.2d 806, 811 (Mass.App.Ct. 2007).[5]

The court in Driscoll explains that an anti-concurrent causation clause "bar[s] coverage for damage due to certain causes regardless of otherwise covered causes of damage." Driscoll, 867 N.E.2d at 811. Similarly, the court in Jussim

---

[5] Plaintiffs rely on Jussim and Driscoll (Docket Entry # 21) but their analysis is misguided. In both cases, the insurance companies invoked exclusions that did not contain anti-concurrent causation clauses. Jussim, 610 N.E.2d at 957 (pollution exclusion did not include an anti-concurrent causation clause); Driscoll, 867 N.E.2d at 811 (exclusion for faulty roof design did not include anti-concurrent causation clause). These cases are distinguished from the present case because defendant invokes an exclusion section that does contain an anti-concurrent causation clause.

15

suggests that this type of clause precludes an insured from seeking coverage for damage caused concurrently by covered and excluded causes of loss. Jussim, 610 N.E.2d at 958. Thus, the presence of the anti-concurrent causation clause in the exclusion section and the unambiguous language of the clause precludes coverage for any damage caused in whole or in part by an excluded cause of loss.

In sum, the policy expressly states that landslide is an excluded cause of loss. (Docket Entry # 22-2, p. 42). Applying the usual and ordinary meaning of the term "landslide," the accident was caused at least in part by a landslide. As such, the accident is excluded from coverage. Due to the anti-concurrent causation clause in the exclusion section, the exclusion for landslide applies to damage caused by landslide even if the damage is concurrently caused by a covered cause of loss. Plaintiffs fail to meet their underlying burden to establish that Section D functions as an exception to the exclusion section. See United Specialty Insurance Co., 2011 WL 7111451 at *5.

As previously noted, defendant seeks summary judgment on the counterclaim. (Docket Entry # 5, p. 12). The counterclaim requests a declaration that there is no coverage for the claimed loss under the policy. (Docket Entry # 5, pp. 7-12). In the answer to the counterclaim, plaintiffs' invocation of estoppel

and waiver (Docket Entry # 9) is unavailing. It is well established that neither doctrine can be used to expand coverage of an insurance policy beyond the parameters of the policy. See MacArthur v. O'Connor Corp., 635 F.Supp.2d 112, 120 (D.R.I. 2009) ("coverage under the policy does not exist as a matter of law, [therefore] the doctrine of estoppel cannot create coverage where none exists"); Providence Washington Indemnity Co. v. Varella, 112 F.Supp. 732, 734 (D.Mass. 1953) (rejecting waiver doctrine because broadening policy's coverage "so as to make it cover a risk not within its terms [is] not a mere waiver of the conditions of the policy but the making of a new contract").

As previously explained, the accident is excluded from coverage. Accordingly, for reasons already explained, summary judgment is warranted in favor of defendant on the counterclaim insofar as this court declares and finds that there is no coverage for the claimed loss under the policy.

The counterclaim, however, also contains a request for attorney's fees and costs. (Docket Entry # 5, p. 12). As a prevailing party, defendant is entitled to costs under Rule 54(d)(1), Fed. R. Civ. P. As to attorney's fees, defendant fails to point to any provision in the policy that would allow defendant to recover attorney's fees. (Docket Entry # 5). Accordingly, having failed to satisfy its summary judgment burden, defendant is not entitled to an award of attorney's fees

17

under the counterclaim. Defendant's motion for summary judgment on the counterclaim is therefore allowed in part and denied in part.

Defendant also seeks summary judgment on the breach of contract claim in Count I. (Docket Entry # 28). Count I alleges that defendant "breached the Policy by denying liability." (Docket Entry # 1, ¶ 26). Because there is no coverage for the accident under the policy, there is no breach of the policy. Summary judgment is therefore warranted in defendant's favor under Count I.

Defendant next seeks summary judgment on Count II of the complaint alleging violation of chapter 93A. (Docket Entry # 28). In Count II, plaintiffs allege that coverage for the accident was "reasonably clear" and that defendant failed to pay for the loss, failed to conduct a reasonable investigation and failed to "promptly provide a reasonable explanation" for its denial. (Docket Entry # 1, pp. 5-6). Without liability under the policy there cannot be a violation of chapter 93A. See Falmouth National Bank v. Ticor Title Insurance Co., 920 F.2d 1058, 1065 (1st Cir. 1990) (finding no breach of title insurance contract and therefore plaintiffs failed to state a claim for violation of chapter 93A); Connell v. Plastridge, 2012 WL 895910, at *4 (Mass.App.Ct. March 19, 2012) (where underlying contract claim fails so does the claim under chapter 93A).

Furthermore, liability under chapter 93A "is based upon the employment of unfair or deceptive acts or practices." Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 545 N.E.2d 1156, 1160 (Mass. 1989). Defendant did not engage in unfair or deceptive acts because it relied upon an accurate interpretation of the policy. See Id. As a result, summary judgment is warranted on Count II in defendant's favor.

II. Plaintiffs' Motion for Summary Judgment (Docket Entry # 20)

Plaintiffs seek summary judgment on the breach of contract claim and on defendant's counterclaim. As explained in the previous section, the policy excludes an accident caused in part by a landslide. Even viewing the record in plaintiffs' favor, there was no breach of contract because the accident was caused at least in part by an excluded cause of loss under the policy. For reasons more fully explained in part I, summary judgment in plaintiffs' favor for either the breach of contract claim or for the counterclaim is denied.

CONCLUSION

In accordance with the foregoing discussion, defendant's motion for summary judgment (Docket Entry # 27) is **ALLOWED**. Plaintiffs' motion for summary judgment (Docket Entry # 20) is **DENIED**.

19

          /s/ Marianne B. Bowler
          ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**MARIANNE B. BOWLER**
United States Magistrate Judge